that he can hear you and he will reserve any questions he has for each side in each argument until the last few minutes of the argument. I will give you a signal that we are switching over to give Judge Kayada an opportunity to ask questions. And he will, of course, participate in samba by telephone as well. And one counsel in our last case has unfortunately had a medical problem in his family and is not able to participate, but we would like the other side to remain here because we'll have some questions and we will then give the opponent an opportunity to hear the transcript and make a filing with us about the questions. So with that unusual configuration we'll start the argument. The first case today is 14-1105, United States v. Timothy Majeroni. Mr. Hughes. Good morning. May it please the Court that I present the case. May it please the Court. Let me add one thing. You must speak into the microphone. Speak up. It's the only way we'll keep the acoustics working. Thank you. May it please the Court. My name is James Hughes and I represent Timothy Majeroni. I intend to focus on three of the five issues. My client served our country in the military for 15 years, but then he got caught up in child pornography and he got convicted in 2001 of possession of child pornography. And this conviction was used in the trial of this case. And I understand I read the government's letter dated March 31, 2015, referencing the U.S. Beech Albert case. And I'm aware of certainly Rule 414 and circuit precedent. But I'd like to distinguish the Jalbert case from this case. In the Jalbert case he was not on supervised release. In this case my client was on supervised release and there were several motions in limine that were granted that the government filed. Number one, the fact that he was on supervised release could come in. Number two, he was subject to GPS monitoring. Three, it required him that there was evidence that required him to get prior approval to leaving his residence. And four, he was not allowed to have a computer. And I submit that this kind of was a tipping point where 414 should not have been let in because of those rulings. In addition, they were recent bad behavior. All those things were current. And that kind of dovetails into my next argument regarding the fair trial that on page 43 of the government's brief they reference USA versus Santa Bria, 645, Fed Third, 505. And in that, this court vacated a conviction under the cumulative error doctrine. And I argue that that's a similar situation here. And that opinion quoted U.S.B. Sepio Evada, 15, Fed Third, 1161, saying on 1195, individual errors insufficient in themselves to necessitate a new trial may in the aggregate have a more debilitating effect. In other words, a column of errors may sometimes have a logarithmic effect, producing a total impact greater than the arithmetic sum of its constituent parts. Well, you have to start by having some errors. And you have not yet argued what the errors were in the trial, given an abuse of discretion standard of review for evidentiary rulings. What's your strongest argument? My strongest argument under Rule 403 that was unfairly prejudicial. I do recognize the abuse of discretion. Thank you. Thank you. And then the third issue I wanted to emphasize was the sentencing, arguing that the unreasonable sentence. He had a guideline range of 135 to 168. There was a consecutive 24-month sentence on the supervised release. And the judge added those together and got to 174. And I submit that there are compelling mitigating sentencing factors that the judge could have taken into account that could have varied downward the sentence. And there again, I recognize there is the high standard, but I'd like to mention the tragic abuse suffered as a child, that at age five, he was put in, I guess, an orphanage and hospitalized. And he was hospitalized for over a year to treat two broken legs, broken collarbone, three broken ribs, and a fractured skull. Then he was adopted into a family where he was sexually abused by the adoptive father. And then he does have a distinguished military service for 15 years. But Counselor, the problem is that there's nothing to suggest that the court first wasn't aware of his background or declined to factor it in. Once again, you need to tell us how the court may have abused his discretion in terms of its coming up with what it deemed to be a reasonable sentence. Unfortunately, the record is what it is. And I'm not going to go into the details of the record. I know you work with what you have. Yes. I understand it. But he did serve in Panama and Honduras regarding the military service. And then thirdly, were the mental health factors. He was deemed 50 percent disabled by the VA due to PTSD. He apparently currently still has nightmares about his childhood abuse and about his serving in Kuwait where he witnessed what they call the highway of death. And then finally, I would argue that the post-offense rehabilitation was another factor that rises to the level that he started an inmate companion program to try to help inmates there. And he tried to make it an official program of the jail in Cumberland County Jail in Maine. And then he hopes to develop a Decipher Hope project to help people who have recently been released. And I think this goes to his rehabilitation prospects. Thank you. Well, Mr. Hughes, we'll now hear from Judge Kayada and see if he has any questions. I have no questions. Thank you, Judge Lange. Thank you, Mr. Hughes. Thank you, Your Honor. Margaret McGoy for the United States. With the Court's permission, I will focus fairly heavily on the Rule 414 issue because if there was no error in that regard, then the defendant's claim of cumulative error disappears. I will also focus on the Joubert case because in the government's view, the contrast between the way the evidence was handled in the Joubert case and the way it was handled in this case makes clear that the Court in this case scrupulously abided by both Rule 414 and Rule 413. In Joubert, in addition to the testimony concerning the charged crime, there was testimony by three live witnesses regarding the defendant's sexual abuse of those witnesses when they were minors. One of them was the defendant's non-biological son, which by itself raises certain specters of prejudice. As I read the Court's opinion, there was no limiting instruction in that case. Here, by contrast, the judge entered a very thorough, reflective, written order on motion in limine. He gave the government strict instructions not to raise the prior conviction in opening statements, to submit the evidence in advance, and to approach the Court before attempting to elicit it. The AUSA scrupulously abided by those restrictions. He voluntarily agreed not to adduce evidence of the SORNA violation. And then when the evidence came in, it was not in the form of live witnesses. It was in the most antiseptic form possible. It was by means of a stipulation which had only the bare-bones facts. The year the defendant was convicted, the nature of the convictions, that it was on two counts of possession of child pornography, and that the defendant was sentenced on it, made no reference to the number of images that were involved in the other case, although we know from the report of pre-sentence investigation that there were 5,200 of them. It also made no reference to the number of images, the sentence the defendant received. It was simply the fact of the conviction. That was promptly followed by a very thorough limiting instruction. It was in many ways a more helpful limiting instruction than the one you addressed in Jones, Judge Thompson. There was no reference to using the prior conviction as propensity evidence. The judge simply charged the jury that they could consider the prior conviction for any purpose they considered relevant, but it reminded them that he was not on trial for any other offense. He was simply on trial for the offense that was charged. The United States, the Assistant U.S. Attorney made only passing reference to the prior conviction in this closing argument. It was about a paragraph. It was also other evidence that the government could have tried to elicit that it didn't. The report of pre-sentence investigation established that the defendant had previously been sexually involved with six underage girls, one of them his own daughter, and there was no effort to reduce that evidence whatsoever. So in the government's view, the court in this case so scrupulously abided by both Rule 414 and Rule 403 that there is no abuse of discretion. In the government's view, the Joubert case also disposes of two other issues that the defendant has raised in this. One is his claim that the prior conviction for child pornography was too old to be considered in a trial in 2013. I believe the Jones opinion addresses that head on, that there is no circuit court that has held that Rule 414 imposes any time limits on the use of prior conviction. And in this case, they were actually more recent than the ones in Joubert. In Joubert, the non-biological son's sex abuse occurred 20 years before trial. And in this case, it was just about a decade earlier. And then the third thing that the government believes that the Joubert helps us for is the reasonableness of the sentence. The sentence in Joubert was 480 months on simply the underlying crime. In this case, the defendant received a mid-guideline range of 150 months on the child pornography charge and a consecutive term of 24 months for the separate event of violating his supervised release. So he was really being sentenced for two different crimes. There was, of course, evidence before the judge that this defendant suffered from post-traumatic stress disorder, that he had served his country, that he had helped inmates. But there was also significant countervailing information that, again, was readily before the court. This defendant had violated supervised release three times. In addition to his underlying 2001 child pornography conviction, he had violated the SORNA regulations. He's a man who evidently was unable to comply with restrictions. And as the government has noted, the pre-sentence report indicated that the defendant had hands-on sexual involvement with minor underage girls. One of them has been his own daughter. And the other one, the daughter of a foster parent. So in the government's view, that was ample basis on which to impose a mid-guideline sentence. If the court has questions about the other issues, I'd be happy to answer them. Judge Kayada? I have no questions. Thank you.